**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

THOMAS E. BROCK                    :        CIVIL ACTION
                                   :
              v.                   :
                                   :
JO ANNE BARNHART,                  :        NO. 03-811


**Baylson, J.**                                    **March 16, 2006**

<u>**MEMORANDUM**</u>

Plaintiff Thomas E. Brock ("Plaintiff") seeks judicial review of the decision of the

Commissioner of the Social Security Administration (the "Commissioner") denying his claim for

disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–

433 ("the Act").  Presently before this Court are the parties' Cross-Motions for Summary

Judgment (Doc. Nos. 4 and 7).  Upon careful and independent consideration of the administrative

record and all filings in this Court, the Court will deny Plaintiff's Motion for Summary Judgment

and grant the Commissioner's Motion for Summary Judgment.

**I.  <u>Background</u>**

    **A.  <u>General Background and Procedural History</u>**

Plaintiff was born on August 21, 1953 and was forty-seven years old when he filed a

claim for DIB.  (R. at 19).  Plaintiff has a limited tenth-grade education.  (R. at 27–28).  His past

relevant work experience involved unskilled jobs performed at the medium and heavy exertional

levels including employment as a machine operator and tire warehouse worker.  (R. at 14, 56).

At the time of the administrative hearing in this matter Plaintiff was receiving worker's

compensation benefits for this injury, including $672.28 every two weeks.  (R. at 28–29).

Plaintiff filed an application for DIB on March 2, 2001 claiming disability as of March 16, 2000.  (R. at 88, 112, 117).  Plaintiff asserts that he sustained a work-related injury in December of 1999 while working at a tire warehouse and that he was disabled under the meaning of the Act from that date due to pain and immobility resulting from that injury that prevented him from performing his job duties. (R. at 112, 117).  On April 30, 2001 the state agency denied Plaintiff's application at the initial determination level of administrative review.  (R. at 66, 71–74).  Plaintiff timely requested a hearing before an Administrative Law Judge.

The hearing was held before Administrative Law Judge Peter V. Train (the "ALJ") on January 11, 2002, (R. at 23–65), and on April 25, 2002, the ALJ issued a decision denying Plaintiff's application.  (R. at 10–22).  The ALJ determined that while Plaintiff had "an impairment or a combination of impairments considered 'severe,'" Plaintiff's allegations regarding his physical limitations were "not totally credible."  (R. at 21).  In fact, the ALJ found that Plaintiff retained the residual functional capacity to "lift up to 10 pounds" and "consistent with a range of sedentary work, with a sit/stand option, which is simple, repetitive and performed in a relatively clean environment with no exposure to fumes or chemicals and which is temperature controlled."   Id.  The ALJ applied the Medical-Vocational Guidelines (the M-V Guidelines) and determined that though Plaintiff's exertional limitations do not permit him to perform the full range of sedentary work, he could perform a significant number of jobs in the national economy.  Id.  The ALJ thus concluded that Plaintiff was not under a "disability" within the meaning of the Act at any time through the date of the decision.  Id.

On June 3, 2002, the Plaintiff made a request for review of the ALJ's decision arguing

that it was not supported by substantial, competent evidence.  (R. at 7–9).  The Appeals Council subsequently denied Plaintiff's request for review.  (R. at 5–6).  Plaintiff sought judicial review of the ALJ's decision in this Court.

The Commissioner filed a Motion for Summary Judgment (Docket No. 4) on November 26, 2004, and the Plaintiff filed his Brief in Support of Appeal (Docket. No. 7) on January 7, 2005.  Plaintiff's brief included a Motion for Summary Judgment along with a supporting memorandum.[1]

**B.  History of Treatment for Physical Ailments**

After his work-related injury in December 1999, Plaintiff visited Dr. Alan J. Hay at Lancaster General Hospital.  In his initial visit on January 27, 2000, Plaintiff reported lower back pain; he was given pain killers and referred to a chiropractor.  (R. at 482–83).  In a visit on March 3, 2000, Plaintiff reported that his back pain had lessened but the pain in his right leg had worsened.  Dr. Hay ordered an MRI and continued to prescribe pain medication. (R. at 479).

Later in March Plaintiff eventually underwent surgery for an extruded disc in his back at

---

[1] The procedural history of this case was complicated by Plaintiff's failure to properly file its Motion for Summary Judgment.  In an October 6, 2004 Order (Doc. No. 3), the Court directed Plaintiff to file his Motion for Summary Judgment by November 5, 2004.  Plaintiff subsequently sent a copy of its "Brief in Support of Appeal" to chambers and to the United States Attorney's Office but failed to properly file the document with the Clerk of Court.  In the meantime, Defendant filed its own Motion for Summary Judgment on November 26, 2004.  In a December 14, 2004 Order (Doc. No. 5), the Court gave Plaintiff ten days to file its summary judgment motion.  On December 29, 2004, the Court ordered that Defendant's Motion for Summary Judgment be granted as unopposed (Doc. No. 5), and judgment was entered in favor of Defendant and against Plaintiff.  Only after the issuance of the December 29 Order did the Plaintiff discover that he had never filed the Brief in Support of Appeal with the Clerk of Court in the United States District Court for the Eastern District of Pennsylvania as required by F.R. Civ. P. 5.  After a February 4, 2005 telephone conference it was agreed to by Sandra Graven, attorney for the Defendant, that this Court would vacate the order granting Defendant's Motion for Summary Judgment as unopposed and that the Court would review the case and render a decision on the merits.  See Pl's Stipulation and Order of Mar. 9, 2005 (Doc. No. 10).

L5/S1.  (R. at 15).  On a follow-up visit with Dr. V. Ward Barr in June 2000, Plaintiff had

"residual generalized complaints" which were uncharacteristic more than two months after the

surgery.  Id.  Following an MRI, the Plaintiff was subsequently informed by Dr. Barr in a July 25,

2000 visit that there were no residual fragments in his back.  Dr. Barr noticed "unusual posturing,

grimacing, and complaints," but could not explain the reasons for such pain.  (R. at 15, 179–80).

        Plaintiff also returned to Dr. Hay three times after the operation.  In the second visit, on

July 6, 2000, Plaintiff complained of pain in his neck and shoulders and contended that the

problems stemmed from his original workplace injury in December 1999.  (R. at 456).  Dr. Hay

stated that he was "uncertain as to the etiology of his problems" but noted that it was possible

that the tire "could have done some damage."  Id.  Still, Hay was unable to explain the delay in

the appearance of Plaintiff's symptoms.  Id.  Finally, in Plaintiff's July 20, 2000 visit, Dr. Hay

reported that both he and chiropractor who had treated Mr. Brock were "at a loss" to explain his

neck and upper back pain and that the patient had "never mentioned problems with his neck or

arms initially, or during the first couple of visits.  (R. at 455).  Dr. Hay was uncertain whether the

alleged injury was work-related and suggested referring the Plaintiff to a specialist for further

evaluation.  Id.

        Plaintiff was referred to Dr. Robert Steinman for a second opinion, and he evaluated

Plaintiff on August 2, 2000.  (R. at 15, 174–78).  Though Plaintiff complained of neck and

shoulder problems and had some tenderness in the area, he had normal range of motion in his

neck and shoulders.  Id.  Dr. Steinman also reported that Plaintiff (1) had normal abduction and

extensor strength at each hip; (2) had good flexion of each knee while prone lying and could

elevate each hip against gravity; (3) had normal supine straight leg raising on the left but limited

on the right because of pain spreading up through the calf to the thigh; (4) had normal range of motion on the left side for sitting root testing but was limited on the right side and could not straighten the knee; and (5) had some tenderness in the lower back (near the surgical incision) and in the upper thoracic spine and neck.  Id.

Plaintiff visited Dr. Steinman again on August 29, 2000 when the Plaintiff reported headaches as well as neck, shoulder, hip, and right leg pain.  (R. at 15, 170–73).  Dr. Steinman was unable to determine what pain was "specifically related to the work injury," but noted that the Plaintiff "demonstrated good back mobility for flexion and extension, for rotating and tilting," and that both neck and shoulder movements were normal.  (R. at 172).  Dr. Steinman recommended a Functional Capacity Evaluation (FCE) and completed a Medical Source Statement allowing for a limited range of light duties.  (R. 170, 173).

After initially evaluating him on July 18, 2000 and ordering an MRI of the cervical spine, Dr. Raluca Mallozzi, a rehabilitation specialist, saw Plaintiff again on September 12, 2000.  (R. at 15, 213–14).  Dr. Mallozzi concluded that the MRI "showed some early degenerative changes of the C5-6 disc with osteophytic ridge projecting towards the right side at C5-6, mildly narrowing the foramen and judged not to be changed from a prior MRI performed of [sic] 06/10/96."  (R. at 15, 213).  Dr. Mallozzi noted general complaints from Plaintiff concerning pain in his neck and  lower back but was not entirely certain as to the cause of the pain.  He wrote that "it has certainly been a long time since his injury and with his general affect and some tendency towards pain behavior, I am also questioning tendency towards somatization of symptoms."  (R. at 214).  Dr. Mallozzi concluded that the Plaintiff was capable of the light duty capacity at work and did not make any changes in the work restrictions given by Dr. Steinman.

5

<u>Id.</u>

Plaintiff followed up with Dr. Mallozzi three more times, on October 3, October 31, and November 28.  Plaintiff again complained of significant pain on October 3, and Dr. Mallozzi noted that Plaintiff did have a tendency toward "giving away" with muscle strength testing and had negative straight leg raising and gave "less of a valid effort" throughout the right lower extremity as compared to the left.  (R. at 15–16, 211–12).  The doctor ordered a bone scan for Plaintiff but concluded that if that test failed to show anything new, then "his upper body complaints do appear to be out of proportion with the clinical findings and possibly suggestive of somatization causes."  (R. at 212).  On October 31, Dr. Mallozzi wrote that though aware of Plaintiff's continuing complaints of pain, if an MRI of the upper thoracic spine were to turn out normal, then "most of the possibilities [he] could think of" had been ruled out, and he was unable to determine the cause of any such pain.  (R. at 210).  In his final visit to Dr. Mallozzi on November 28, Plaintiff again complained of significant pain but according to the doctor "there was no clear cause necessarily associated with his work injury."  (R. at 208–09).  Dr. Mallozzi discharged Plaintiff to the care of his family physician and again noted that he could return to work in at least a light duty capacity.  (R. at 209).

On November 17, 2000 Plaintiff received an independent medical examination by Dr. Michael Mitrick, an orthopedic specialist.  After the physical exam, Dr. Mitrick reported "a totally normal neurologic exam in both lower and upper extremities" and "no evidence of any nerve root irritation in the lower extremities and most specifically in his right leg."  (R. at 432).  The doctor also addressed the cause of Plaintiff's injuries and concluded as follows:

<u>I can say with 100% certainty that , if in fact this gentleman is even having any</u>

6

> problems in his neck or upper back, they are not related to the tire [falling on him
> in the workplace].  He saw several physicians. including a chiropractor on
> numerous occasions, and he never once complained of any discomfort in the
> upper back or neck.  In fact, he complained of no pain until seven months later.
> Any complaints he may now have in regard to his neck or back are certainly not
> related to that event.  It would be totally unfair in every aspect to even consider
> that they are.

(R. at 433 (emphasis added)).  Mitrick wrote that considering Plaintiff's slight build and the fact

that he did have lower back surgery, could return to work as a warehouseman but with a thirty-

five-pound weight restriction.  Id.  The doctor also recommended a functional capacity evaluation

for Brock.

The Plaintiff participated in a FCE on March 30, 2001, which subsequently determined

that the he was capable of performing sedentary level activity.  The FCE was performed by

exercise physiologist James Gaffney, who determined that the results of the FCE should not be

considered "a true representation of his abilities," as Plaintiff "demonstrated an inconsistent

effort during the assessment."  (R. at 438–39).  Specifically, Gaffney found that Plaintiff engaged

in "cogwheeling, an inconsistent movement pattern used to portray greater difficulty throughout

the assessment."  (R. at 438).  Plaintiff was put through a number of tests and he complained of

lower back and right knee pain throughout, often demonstrating between 25% and 50% range of

motion.  (R. at 438–47).  Ultimately, Gaffney concluded that:

> Due to inconsistent effort, Mr. Brock's actual physical capabilities must be left to
> conjecture; however, if he is approached with the results of this assessment, and if
> he is willing to fully participate in another assessment, the results can then be used
> to determine safe return to work levels and/or to set rehabilitation goals.  In any
> case, Mr. Brock can work at least at the [sedentary] level[] identified within this
> report.

(R. at 439).

7

Dr. Robert W. Mauthe first examined the Plaintiff on June 13, 2001 after being referred for nonsurgical management of back pain.  Though Mauthe gave Plaintiff an injection over the supraspinous ligament for relief of pain, he did express a desire to review the patient's prior medical records, as they had not yet been received at the time the report was written.  (R. at 207). Plaintiff returned to Dr. Mauthe on October 10, 2001 and again complained of back pain.  Dr. Mauthe opined that Plaintiff has "reached maximum medical improvement" and "needs to learn to live with his pain and stay fit."  (R. at 205).  Mauthe also noted that due to Plaintiff's severe pain,  Plaintiff "does not feel he is capable of any form of regular or sustained gainful employment."  Id.

## II.  Legal Standard

### A.  Disability Determinations

The Social Security Administration applies a five-step sequential evaluation to determine if an applicant qualifies for DIB.  See, e.g., Burns v. Barnhart, 312 F.3d 113 (3d Cir. 2002); Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999); Williams v. Sullivan, 970 F.2d 1178, 1180-81 (3d Cir. 1992); see also 20 C.F.R. § 404.1520.  In Plummer, the Third Circuit explained the five-step sequential evaluation process promulgated by the Social Security Administration to determine whether a claimant is disabled.  See 20 C.F.R. § 404.1520.  The Court explained:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity.  20 C.F.R. § [404.] 1520(a).  If a claimant is found to be engaged in substantial activity, the disability claim will be denied. In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment.  20 C.F.R. § 404.15209(c).  If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.  In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work.  20 C.F.R. § 404.1520(d).  If a claimant does not suffer from a listed

> impairment or its equivalent, the analysis proceeds to steps four and five.  Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d).  The claimant bears the burden of demonstrating an inability to return to her past relevant work.  If the claimant is unable to resume her former occupation, the evaluation moves to the final step.  At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability.  20 C.F.R. § 404.1520(f).  The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity.  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of per forming work and is not disabled.  See 20 C.F.R. § 404.1523.  The ALJ will often seek the assistance of a vocational expert at this fifth step.

Plummer, 186 F.3d at 428.

Congress has authorized the Commissioner "to make findings of fact, and decisions as to the rights" of any individual applying for disability benefits.  42 U.S.C. § 405(b)(1).  The Commissioner is also required to resolve any discrepancies between the medical evidence and a claimant's subjective complaints.  Id. § 416.929.

## B.  Judicial Review of Disability Determinations

The Social Security Act provides for judicial review of any "final decision of the Commissioner of Social Security" in a disability proceeding.  42 U.S.C. § 405(g).  The district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Id.

The standard of review of an ALJ's decision is plenary for all legal issues.  Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 421 (3d Cir. 1999).  The Court must review the record to determine whether substantial evidence supports the ALJ's decision.  Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).  The factual findings of the ALJ are accepted as

conclusive, provided they are supported by substantial evidence.  Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003).  "Substantial evidence has been defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (quotations and citations omitted); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  The Court must not "weigh the evidence or substitute [its own] conclusion for those of the fact-finder."  Rutherford, 339 F.3d at 552 (quoting Williams, 970 F.2d at 1182).  As such, "[t]his Court is bound by the ALJ's finding of fact if they are supported by substantial evidence on the record."  Plummer, 186 F.3d at 427.

## III.  Discussion

Plaintiff appeals the ALJ's decision and argues that the denial of DIB was not supported by substantial evidence.  Plaintiff also asserts that the potential jobs listed by the ALJ do not exist in sufficient numbers in the regional or national economy.  Defendant contends that substantial evidence in the record was adequate to support the ALJ's finding that Plaintiff could perform a full range of sedentary work before and, thus, Plaintiff's failure to perform such work rendered him ineligible for benefits.

In reviewing the medical evaluations summarized above, this Court finds that the ALJ's findings are based on substantial evidence and that the record is such that a reasonable mind might accept as adequate that Plaintiff has failed to sustain his burden that his pain prevented him from performing other work at the sedentary level.  In his report the ALJ placed "significant weight" upon the assessments of Drs. Steinman, Mallozzi, Mitrick, and Mauthe, and generally agrees with their determination of a capacity for a range of light work. (R. at 18)  Plaintiff attempts to emphasize Dr. Mauthe's opinion, arguing that "Plaintiff [sic] complaints are

supported by and consistent with the medical evidence of Dr. Mauthe." Pl's Br. at 9.  The Court

concludes, however, that the ALJ, in reaching his determination that the Plaintiff is not disabled,

properly utilized the Mauthe records and took account of the fact that in his notes the doctor was

merely recounting subjective statements made by a patient during the course of an examination.

In light of the fact that the ALJ engaged in a reasoned analysis of the relevant evidence in

the administrative record, his rejection of a limited portion of Dr. Mauthe's opinion was proper.

This Court is not charged with reweighing each piece of evidence.  Instead, the Court must

ensure that the ALJ did not reach his conclusions in an arbitrary manner.  When the opinion of a

treating physician conflicts with that of the ALJ, as it did regarding certain findings of Dr. Hay

and particular statements by Dr. Mauthe, a clarification on the record of the reasons for rejecting

or placing little weight on those opinions and pointing to other evidence in the record to support

the ALJ's conclusions is generally sufficient to support a finding of substantial evidence.  In this

case, the ALJ carefully set forth the lengthy medical history of the Plaintiff and explained his

reasons for according relatively little weight to the Medical Source Statements of Dr. Hay as well

as to the comments of Dr. Mauthe concerning Plaintiff's own perceptions of his impairments.

(R. at 16–19).  In short, the Court finds that the substantial weight of the objective medical

evidence supported the conclusion that Plaintiff was not disabled since March 16, 2000.

Based on this substantial record evidence, it was also clearly within the ALJ's discretion

to make credibility determinations regarding Plaintiff's subjective testimony as to his symptoms

and limitations.  See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).  Because the

ALJ considered Plaintiff's subjective complaints of pain and, as the finder of fact, properly

assessed his credibility in the context of all the other evidence of record, this Court will not

disturb the ALJ's determination that Plaintiff did not suffer totally debilitating symptoms and limitations and that he had the Residual Functional Capacity ("RFC") to perform sedentary work during that time period.[2]   The medical records several times suggest potential somatization of symptoms, (R. at 432 (noting that Plaintiff was "putting on")); (R. at 212, 214 (suggestion of "somatization"), and Mr. Gaffney, who performed the FCE on March 30, 2000, even went as far as to suggest that Plaintiff was deliberately underperforming in various flexion and strength tests. (R. at 438–39).

Finally, the Court finds that the ALJ properly used the M-V Guidelines upon reaching the above-stated conclusions.  The Court holds that the ALJ properly relied upon the M-V Guidelines to decide that based upon Plaintiff's RFC, he is capable of performing a significant range of sedentary work, as defined in 20 C.F.R. § 404.1567.  The ALJ noted in his report that "[i]f the claimant were capable of performing the full range of sedentary work, a finding of not disabled would be directed by the Medical Vocational Guidelines." (R. at 20).  The Plaintiff, however, is impeded by "additional exertional and/or non-exertional limitations," and the ALJ therefore turned to an impartial vocational expert in order to determine whether there are a significant number of jobs in the national economy that Plaintiff can perform considering both his RFC and other relevant vocational factors.  (R. at 219–20; Finding No. 13).

Though not thoroughly discussed by Plaintiff, it appears that he has challenged the determination by the vocational expert as to the availability of appropriate jobs in the national economy.  Plaintiff, however, provided no evidence in support of his assertion that "the jobs

_____

[2]  The Third Circuit has defined RFC as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Hartranft, 181 F.3d at 359 n.1 (citing 20 C.F.R. § 404.1545(a)).

listed by the Administrative Law Judge do not exist in sufficient numbers in the regional or national economy." Pl's Br. at 9. The Court will not, based on this bald assertion, question the conclusion of the vocational expert concerning the availability of appropriate occupational opportunities.

Examining the ALJ's report as a whole, the Court finds that the five-step process required in every review of social security benefit claims was met and that there is substantial evidence that Plaintiff is able to perform a range of sedentary work with a sit/stand option, which is simple, repetitive, and performed in a relatively clean environment with no exposure to fumes or chemicals and which is temperature controlled. Moreover, the Social Security Administration has met its burden in demonstrating that there are a suitable number of such jobs in the national economy which Plaintiff could perform. The Court therefore upholds the ALJ's determination that the Plaintiff was not under a "disability," as defined at 20 C.F.R. § 404.1520(f), at any time through the date of the ALJ's report.

## IV. Conclusion

For the foregoing reasons, this Court concludes that the ALJ and Commissioner applied the proper legal standards and that the decision of the ALJ is properly supported by substantial evidence. Accordingly, the Commissioner's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be denied.

An appropriate Order follows.

13

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

THOMAS E. BROCK                     :
                                    :
                                    :          CIVIL ACTION
                                    :
              v.                    :
                                    :
JO ANNE BARNHART,                   :          NO. 03-811

**ORDER**

AND NOW, this 16th day of March, 2006, after careful and independent consideration of

the parties' Cross-Motions for Summary Judgment, and review of the record, it is hereby

ORDERED that:

1.      The Commissioner's Motion for Summary Judgment (Doc. No. 4) is GRANTED;

2.      The Plaintiff's Motion for Summary Judgment (Doc. No. 7) is DENIED; and

3.      The decision of the Commissioner is AFFIRMED.

4.      The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff

        and to mark this case as closed.

                                    BY THE COURT:


                                     s/ Michael M. Baylson
                                    Michael M. Baylson, U.S.D.J.

O:\Richard\Brock v. Barnhart\Brock v. Barnhart Summ. Judg..wpd

14